IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| PERCY FOREMAN,  ) | |
| TDCJ #926545,  ) | |
| Plaintiff,  ) | |
|   ) | Civil Action No. 7:07-CV-181-O |
| v.  ) | |
|   ) | |
| DAWN WILKINSON, *et al.*,  ) | |
| Defendants.  ) | |

MEMORANDUM OPINION AND ORDER

Came on this day to be considered *Defendants Wilkinson and Tinkham's Motion for Summary Judgment and Brief in Support* (Doc. No. 53), *Plaintiff's Motion for Summary Judgment and Brief in Support* (Doc. No. 57) and *Plaintiff's Objection to Defendants' Motion for Summary Judgment* (Doc. No. 55), and the Court finds and orders as follows:

This is an action brought pursuant to 42 U.S.C. § 1983 by an inmate who, at the time of the events giving rise to this lawsuit, was confined in the Allred Unit of the Texas Department of Criminal Justice ("TDCJ") in Iowa Park, Texas. Defendants are Dawn Wilkinson, a nurse employed at the Allred Unit, and Officer B. Tinkham, a correctional officer at the Allred Unit. *Amended Complaint ¶ IV.B.* Seven additional Defendants were dismissed from this action by order entered November 12, 2009 (Doc. No. 26). Plaintiff claims that Defendant Wilkinson conspired to retaliate against him and deny him proper medical care. *Id.* He claims that Defendant Tinkham brought a false disciplinary charge against him for the purpose of retaliation. *Id.* Foreman seeks monetary damages and injunctive relief. *Id.* at pp. 4K and 4L.

Denial of Medical Care

Plaintiff claims that Defendant Wilkinson denied him heat pad treatments for his back. *See Plaintiff's Answers to the Court's Questions No. 2 & 3.* Specifically, Plaintiff alleges that Wilkinson denied him "back treatment" on January 1, 2008 and on January 3, 2008. *Id. at No. 3.* He further alleges that Wilkinson denied him heat treatments for his back on December 8, 9, 10, 15 & 24, 2006 and on October 31, 2005. *Id. at No. 5; Amended Complaint at pp. 4(A) & 4(B).*

In order to state a colorable claim for the denial of medical care under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference" under the Eighth Amendment occurs only where a prison official subjectively knows of and disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). A delay in medical care can rise to the level of a constitutional violation if the delay results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice appropriately addressed under state law. *E.g., Estelle v. Gamble*, 429 U.S. at 107-08; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Defendants concede that Plaintiff was receiving heat treatments for his back. *Defendants Wilkinson and Tinkham's Brief in Support of Motion for Summary Judgment p. 5 (hereinafter "Defendants' Brief at p. ___ .").* However, they argue that Plaintiff was not denied medical care and that he received his heat treatments except when his own disruptive behavior caused prison officials to remove him from the infirmary. *Id. at pp. 5-6.*

Review of Plaintiff's medical records reveals that, on June 20, 2006, Plaintiff was evaluated for musculoskeletal symptoms. *Defendants' Brief, Exhibit D at p. 2.* He was provided with a treatment plan and referred to a physician. *Id.* On July 7, 2006, lumbar spine x-rays were ordered for further evaluation of Plaintiff's lower back pain. *Id. at p. 3.* Plaintiff received multiple heat treatments during the month of July 2006. *Id. at pp. 4-5.* The radiology report from Plaintiff's lumbar spine x-rays indicated moderate degenerative disease at L4-5 with loss of lordotic curvature and minimal spinal scoliosis. *Id. at p. 8.* There was no evidence of fracture, dislocation or subluxation. *Id.* Minimal transitional changes were seen in the first lumbar vertebra. *Id.*

Foreman was provided with nursing assessment protocols for his back pain on July 27, 2006 and August 9, 2006. *Id. at pp. 9-10.* On August 15, 2006 the treatment plan for Foreman's back pain included moist heat twice a week for four weeks. *Id. at p. 11.* Foreman was thereafter provided with heat treatments. *Id at pp. 12-15.* On October 5, 2006, Foreman's heat treatments were increased to twice daily for two weeks. *Id. at pp. 16-17.* On December 12, 2006, Dr. Razack prescribed Robaxin 750 mg for Foreman and ordered heat treatments twice a day for fourteen days to treat Foreman's back pain. *Id. at p. 20.* Later that day, Foreman failed to show up for his heat treatment. *Id. at p. 21.* On December 13, 2006, Foreman was provided with two heat treatments. *Id. at p. 22.* On December 14, 2006, Plaintiff received one heat treatment, but the record reflects

he did not show up for the second heat treatment as a result of being moved to a different building. *Id. at p. 23.* On December 15, 2006, Plaintiff received two heat treatments. *Id. at p. 24.* On December 16, 2006, Plaintiff received one heat treatment and was a no show for the second heat treatment. *Id. at p. 25.*

The next documented heat treatments were on December 23, 2006 when Plaintiff received two heat treatments. *Id. at p. 26.* On December 24, 2006, Foreman was removed from the medical department after he began masturbating during his heat treatment and then became aggressive and threatening toward staff. *Id. at p. 28.* On each of the next three days, Foreman was escorted out of the medical department for masturbating during his heat treatments. *Id. at p. 29-30.* At that time, Foreman's heat treatments were discontinued due to his inappropriate behavior. *Id.* However, other medical treatments for Foreman's back pain were continued. *See id. at pp. 31-78.*

The medical records show that Plaintiff was seen, evaluated, and treated multiple times for his back pain. The summary judgment evidence demonstrates that Plaintiff was not denied medical care, rather, heat treatments were discontinued as a result of Plaintiff's own conduct in masturbating during heat treatments four days in a row. Such a decision on the part of medical care personnel is not constitutionally infirm. Medical evaluations and other treatments for Foreman's back pain continued, even after the discontinuation of his heat treatments.

Retaliation

Plaintiff next claims that Defendants conspired to retaliate against him because of two grievances he filed against Defendant Wilkinson. *Amended Complaint ¶ V.* Specifically, Plaintiff claims that Wilkinson denied him a heat treatment on December 15, 2006 for purposes of retaliation, even though she claimed that the denial was because Plaintiff was late for his appointment. *Id. at*

*p. 4(A).* Plaintiff also alleges that Wilkinson retaliated against him by called a ranking officer to the infirmary and making a false accusation that Plaintiff had violated a prison rule. *Id.* Plaintiff claims that Wilkinson stated that the grievance he filed against her would cause him problems for as long as he was at the Allred Unit. *Id.* Plaintiff alleges that, on December 24, 2006, Officer Nunez told him to stop masturbating in the medical department, which he claims he was not doing, and to sit down. *Id. at p. 4(C).* Plaintiff claims to have overheard Defendants Tinkham and Wilkinson collaborating together, discussing Plaintiff's grievances and his criminal history and stating that they would teach him a lesson and that they always stick together. *Id.* Foreman claims that Tinkham then accused him of masturbating and brought false disciplinary action against him for the purpose of retaliating on behalf of Wilkinson. *Id. at pp. 4(C) & 4(D).*

A prison official may not retaliate against an inmate for complaining through proper channels about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995); *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986). In order to show retaliation an inmate "must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods*, 60 F.3d at 1166). This places a significant burden on the inmate. Mere conclusory allegations are insufficient to state a claim. *Woods*, 60 F.3d at 1166; *Richardson v. McDonnell,* 841 F.2d 120, 122-23 (5th Cir. 1988). The inmate must produce direct evidence of motivation or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166 (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Plaintiff claims that the alleged retaliation was a direct result of two grievances he filed against Wilkinson, No. 2007035117, filed on October 13, 2006, and No. 2007065192, filed on December 14, 2006. *Amended Complaint ¶ V.* Review of the summary judgment evidence reveals that Plaintiff's grievances were actually filed on October 30, 2006 and December 20, 2006. *Defendants' Brief, Exhibit C at pp. 28 & 51.* The verified medical records submitted by Defendants reflect that Wilkinson provided heat treatments to Plaintiff on December 14, 15, 16, 23 & 24, 2006. *Defendants' Brief, Exhibit C at pp. 23-27.* All of those treatments were provided by Wilkinson after Plaintiff filed his first grievance against her. Two of the treatments were provided by Wilkinson after Plaintiff filed his second grievance against her. Even assuming that the medical records are in error, and that Wilkinson refused to treat Plaintiff on December 14, 2006, Plaintiff concedes that he was late getting to the infirmary because of a delay at the pill window. *See Plaintiff's Answer to the Court's Question No. 1.* With regard to Plaintiff's removal from the infirmary on December 24, 2006, the summary judgment evidence reveals that he was removed for masturbating during his heat treatment, not for purposes of retaliation. *Id. at p. 28.*

To support a retaliation claim, Foreman is required to either produce direct evidence of retaliatory motivation or show a chronology of events from which retaliation may plausibly be inferred. He has not met this burden. There is no direct evidence of any retaliatory motive on the part of Wilkinson or Tinkham and Plaintiff has not shown that an inherently suspect chronology of events exists to support his retaliation claim. There is no indication that Plaintiff's complaints against Wilkinson resulted in any disciplinary action against Wilkinson such that she would be so angry as to retaliate against him by denying him medical care or by having Tinkham file false disciplinary charges against him. An inmate cannot convert action on the part of a prison official

in filing disciplinary charges into a constitutional violation by making a conclusory allegation of retaliation. *See Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988) (dismissing conclusory allegations that prison official's action was taken for retaliatory purposes because of prior complaints by the inmate). In short, Plaintiff has failed to demonstrate that, but for his complaints against Wilkinson, he would not have been denied heat treatments or suffered disciplinary action.

<u>Summary Judgment Standard</u>

Summary judgment is proper when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law provides that an issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The nonmovant is not required to respond to the motion until the movant properly supports his motion with competent evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and wait for trial. *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988).

When a movant carries his initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. *Celotex*, 477 U.S. at 322-24; *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this

burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as the opposing party's response must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c)(2); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [Court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The movant's motion for summary judgment will be granted if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56(e)(2).

The summary judgment evidence presented in the instant case establishes that there are no genuine issues of material fact and that Defendants are entitled to summary judgment as a matter of law.

For the foregoing reasons, it is ORDERED that *Defendants' Motion for Summary Judgment* is GRANTED, *Plaintiff's Motion for Summary Judgement* is DENIED, and the complaint is hereby dismissed with prejudice.

The Clerk of Court shall transmit copies of this order to Plaintiff and to Counsel for Defendants.

SO ORDERED this 26th day of July, 2010.

**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**